FILED
FEB 17 2011
CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CR. No. S-08-474 EJG |
| ) | |
| Plaintiff, ) | [Proposed] ORDER ON DEFENDANT |
| ) | BEHROOZ BADIE'S MOTIONS TO |
| v. ) | SEVER AND TO SUPPRESS |
| ) | STATEMENTS |
| BEHROOZ BADIE, and ) | |
| DINO ROSETTI, ) | |
| ) | |
| Defendants. ) | |

The above-referenced case came on before the Court on January 21, 2011, for a hearing on Defendant Behrooz Badie's Motion to Sever (Docket, # 103) and Motion to Suppress Statements (Docket, # 104). Defendant Behrooz Badie was present in court and was represented by his counsel, Patrick Hanly, Esq. The United States was represented by AUSA Philip Ferrari. Co-defendant Dino Rosetti was also present and represented by his counsel, Mark Reichel, Esq.

A transcript of the hearings on these two motions is attached as Exhibit A to this Order. For the reasons stated in open court, as set forth in Exhibit A to this Order (1:17-5:17), Defendant

1  Badie's Motion to Sever is DENIED.  In addition, for the reasons
2  stated in open court, as set forth in Exhibit A to this Order (5:18-
3  10:22), Defendant Badie's Motion to Suppress his Statements is
4  DENIED.

**IT IS SO ORDERED.**

DATED: 2/7/11

HON. EDWARD J. GARCIA
UNITED STATES DISTRICT JUDGE

# EXHIBIT A

```
 1            IN THE UNITED STATES DISTRICT COURT
 2           FOR THE EASTERN DISTRICT OF CALIFORNIA
 3                         ---oOo---
 4     BEFORE THE HONORABLE EDWARD J. GARCIA, SENIOR JUDGE
 5                         ---oOo---
 6   UNITED STATES OF AMERICA,
 7        Plaintiff,
 8   vs.                              No. Cr. S-08-0474 EJG
 9   DINO ROSETTI and BEHROOZ
     BADIE,
10
         Defendants.
11   _____
12
13                         ---oOo---
14
15                   REPORTER'S TRANSCRIPT
16
17                     MOTION HEARING
18
19                 FRIDAY, JANUARY 21, 2011
20                         ---oOo---
21
22
23
24
25   Reported by:     MICHELLE L. BABBITT, CSR #6357
```

```
 1                         APPEARANCES

 2

 3

 4     For the Government:

 5
               BENJAMIN WAGNER
 6             UNITED STATES ATTORNEY
               501 I Street
 7             Sacramento, California  95814
               BY:  PHILIP FERRARI
 8                  Assistant U.S. Attorney

 9     For Defendant Rosetti:

10             MARK REICHEL
               Attorney at Law
11             455 Capitol Mall, Suite 350
               Sacramento, California 95813
12
       For Defendant Badie:
13
               PATRICK HANLY
14             Attorney at Law
               980 Ninth Street, 16th Floor
15             Sacramento, California 95814

16

17

18

19

20

21

22

23

24

25
```

1

1           SACRAMENTO, CALIFORNIA

2       FRIDAY, JANUARY 21, 2011; MORNING SESSION

3                    ---oOo---

4

5       THE CLERK: Calling 08-474, United States versus Dino

6  Rosetti and Behrooz Badie.

7       MR. FERRARI: Phil Ferrari for the United States.

8       MR. REICHEL: Mark Reichel with Mr. Rosetti. He's

9  present.

10      MR. HANLY: Patrick Hanly with Mr. Badie, also

11 present, out of the custody.

12      THE COURT: This matter is on calendar this morning on

13 defendant Badie's motion to suppress and to sever defendants

14 for trial.

15      No trial date has yet been set, Mr. Hanly?

16      MR. HANLY: Not yet, Your Honor.

17      THE COURT: I'll take up the motion to sever first.

18      Defendant Badie moves to sever his case from

19 co-defendant Rosetti pursuant to Federal Rule 14. I've

20 reviewed the briefs on the matter.

21      Is there anything you want to add, Mr. Hanly, not

22 covered in your briefs or which you wish to briefly

23 emphasize?

24      MR. HANLY: No, Your Honor. I would point out that I

25 think this is the one -- the statement I'm referring to in my

MICHELLE L. BABBITT, OFFICIAL COURT REPORTER -- (916) 448-7938 USDC

1  papers is not the statement Mr. Ferrari is referring to that
2  was made by Mr. Rosetti. There were two statements by him.
3  In the second one he said, "I never got the addendum from
4  Mr. Badie." That's the one I'm referring to, not the first
5  one, which they don't mention it.
6        Other than that, I'll submit it.
7        THE COURT: One of the problems I had, the exhibits
8  that you submitted to your motions were completely illegible.
9        MR. HANLY: Mine were?
10       THE COURT: I left them in my chambers. Yes.
11       MR. HANLY: If I could approach -- I don't know if you
12 need them.
13       THE COURT: It's not needed.
14       MR. HANLY: They appeared legible to me when I sent
15 them. I printed this off and it came off fine. I don't know
16 what happened.
17       THE COURT: Mr. Ferrari, if you submit this motion, I
18 intend to deny it.
19       MR. FERRARI: Motion submitted, Your Honor.
20       THE COURT: Proper joinder of co-defendants under
21 Federal Rule 8(b) presupposes the co-defendants will be tried
22 together unless prejudice against one or the other would
23 occur. Defendant has not moved for misjoinder under Rule
24 8(b) conceding proper joinder under that rule.
25       Severance under Federal Rule 14, based on alleged

1   prejudice, places a burden on the moving defendant to
2   establish prejudice and is within the discretion of the
3   court, and to warrant severance, the defendant must
4   demonstrate clear, manifest or undue prejudice and must make
5   a showing that any prejudice must outweigh the dominant
6   concern with judicial economy and embodied in the federal
7   court's preferences for joint trials.
8          In this connection, see U.S. v Brashier and U.S. v
9   Gaines cited by the government.  As the Gaines case teaches,
10  quote:
11                  "The general rule that joint trials of
12                  persons charged together for committing the
13                  same offenses expedites the administration
14                  of justice, reduces the congestion of trial
15                  dockets, conserves judicial time, lessens
16                  the burden of citizens to sacrifice time
17                  and money to serve on juries and avoids the
18                  necessity of recalling witnesses who would
19                  otherwise be called on to testify only
20                  once," unquote.
21         To overcome circuit law then for the preference that
22  defendants properly joined should be tried together -- should
23  not be tried together in this case, defendants cites three
24  claims, raises three claims:
25         First, defendant claims disparity of evidence is a

1   sufficient ground for severance, but that simply is not the
2   law of the circuit.  The cases the government cites clearly
3   show that merely because more incriminating evidence will be
4   introduced as to one co-defendant over another is
5   insufficient justification for having two separate trials.
6           What's more, the government proffers that it disagrees
7   with defendant's factual claims concerning alleged lack of
8   incriminating evidence against the moving defendant.  There
9   does not appear to be a great or overwhelming disparity in
10  evidence as to the co-defendants here.
11          In addition, the court, of course, would give
12  cautionary instructions to the jury to assist them in
13  compartmentalizing evidence between the two defendants.
14          Frankly, it's been my experience that experienced
15  defense counsel turn disparity of evidence to their advantage
16  at trial pointing to the paucity of evidence against their
17  defendant as against an overabundance of evidence of guilt
18  against co-defendants and get their clients off with a not
19  guilty verdict.  That has occurred at least three times in my
20  court.
21          Next, defendant's claimed severance is required
22  because he and co-defendant have antagonistic defenses;
23  however, as the government points out, that alone is
24  insufficient for severance.  The true test is whether the two
25  defendants' defenses are mutually exclusive such that

5

1  acquittal of one necessarily results in the conviction of the
2  other, and in this connection, the government argues that
3  factually defendant Badie has not identified such a conflict.
4       The government argues Badie has raised only a
5  possibility that such a conflict may arise and that that
6  possibility would be at odds with prior statements to
7  investigating agents by both Badie and co-defendant Rosetti.
8       Lastly, defendant raised a Bruton issue.  He argues if
9  the government introduces a statement made by co-defendant
10 Rosetti that incriminates Badie, the admission of such a
11 statement by a non-testifying co-defendant, Rosetti, would
12 violate Badie's Constitutional Right of confrontation.
13      However, the government proffers that it does not
14 intend to offer the portion of the statement defendant refers
15 to; that is, that he never received the addenda in issue from
16 defendant Badie.
17      Defendant's motion for severance is denied.
18      Next, I'll take up Badie's motion to suppress
19 statements made by him to law enforcement officers at his
20 home on August 28th, 2008.  On this motion, I've read the
21 briefs and have done some independent research.
22      Is there anything you want to add on this motion, Mr.
23 Hanly?
24      MR. HANLY:  No, Your Honor.
25      Thank you.

1  THE COURT: Mr. Ferrari, if you submit this motion, I
2  intend to deny it.
3  MR. FERRARI: Motion is submitted, Your Honor.
4  THE COURT: In this motion to suppress, defendant
5  contends that the statements were obtained illegally because
6  he was, quote, in custody, unquote, and was not given Miranda
7  warnings. The government opposes the motion, arguing that
8  defendant was not in custody.
9  The motion will be denied.
10  The question is whether defendant was in custody. As
11  the Ninth Circuit Craighead case cited by the parties notes,
12  this determination is fact intensive; However, defendant has
13  offered no evidence by way of affidavit or otherwise to
14  support his version of the facts as set out in the motion.
15  Even assuming this version of the facts, defendant was
16  not in custody and his statements were not coerced; thus, no
17  constitutional violation occurred.
18  As stated in the motion to suppress, three agents
19  dressed in plain clothes, one each from the FBI, IRS and
20  California Department of Real Estate, appeared at defendant's
21  door at 7:00 a.m. They showed badges but didn't have business
22  cards.
23  They said they were conducting an investigation and
24  wanted to ask defendant some questions, to which he
25  consented. The defendant was questioned for about two hours

1  in his living room.  The agents sat on the sofa between
2  defendant and his front door.
3       During the questioning, the agents told defendant they
4  had evidence of his guilt and that they thought he was lying.
5  Defendant felt intimidated and fearful.  Defendant was not
6  told he could leave or that he could contact an attorney or
7  that he was free to go.  The agents did not expose weapons,
8  but defendant knew they were armed.
9       The Ninth Circuit Bassignani and Kim cases cited in
10 the briefs make it clear that the government may not use
11 statements obtained during a custodial interrogation unless
12 Miranda warnings were provided.
13      In a case such as this where the defendant was not
14 formally taken into custody, the question then is whether he
15 was deprived of his freedom of action in any significant way.
16      This is a two-part determination which looks at:
17      One, the circumstances surrounding the questioning,
18 and, two, whether a reasonable person in defendant's position
19 would have felt free to leave or end the questioning.
20      In the case of an in-home interrogation like the one
21 before the court, the Ninth Circuit focuses on whether and to
22 what extent the circumstances turn the otherwise comfortable
23 and familiar surroundings of the house or home into a
24 police-dominated atmosphere.
25      In that connection, see United States V Craighead, a

1    2008 Ninth Circuit case cited in the briefs.  In that case,
2    the court listed four relevant factors:
3           One, the number of the enforcement personnel and
4    whether they were armed.
5           Two, whether the defendant was restricted physically
6    or by threats.
7           Three, whether he was isolated.
8           Four, whether the defendant was informed he was free
9    to leave or to terminate the interview.
10          An application of those factors yields the following
11   analysis:
12          First, there were three agents dressed in plain
13   clothes whose weapons were not visible.  They asked for
14   permission to enter.  This was not a situation like that in
15   Craighead or the cases cited in that opinion where a large
16   number of officers entered the home with weapons drawn for
17   purposes of executing a search warrant, filling the entire
18   home and leaving the police-free rooms.
19          Here the defendant's speculation that the agents were
20   armed does not ipso facto convert defendant's home into a
21   police-dominated atmosphere.  This factor weighs against a
22   finding of custody.
23          Second, defendant was not restrained by physical force
24   or threats.  Unlike Craighead, where a visibly armed officer
25   wearing a flak jacket leaned against a closed door as if to

1  block the exit, the interview setting in the instant case was
2  innocuous, occurring in the living room with the defendant
3  and the agents seated on his sofa.

4  Once again, defendant's speculation that the agents'
5  mere presence in his home prevented him from leaving is not
6  supported by any evidence nor has defendant submitted a
7  declaration to support the statement in the notice in the
8  motion that the agents had evidence of his guilt and told him
9  he was lying. This factor also weighs against a finding of
10 custody.

11 Third, defendant was not isolated from others. He was
12 alone in a home when the agents arrived. There were no other
13 people from whom to separate them. This factor weighs
14 against a finding of custody.

15 Fourth, defendant was not told he could terminate the
16 interview or that the agents would leave if asked. To the
17 extent the absence of these statements contributed to
18 defendant's belief he was not at liberty to believe, this
19 factor could weigh in favor of a finding of custody.

20 Defendant also cites a case from this district, U.S. v
21 Blanford, in which a colleague suppressed statements during
22 an in-home interrogation finding a police-dominated
23 atmosphere existed. I've reviewed the briefs in that case as
24 well as the transcript of the evidentiary hearing.
25 To the extent the facts in that case are similar, I

1    disagree with the analysis of my colleague.  As he noted at

2    the hearing, there are a number of district courts in which

3    judges have addressed this issue since Craighead, many of

4    which would have reached a different conclusion on the facts

5    presented in his case than he did.

6         I've reviewed these cases as well.  They are U.S. v

7    Krstic, from the District of Oregon, U.S. v Graham from the

8    District of Idaho, and U.S. v Evanston from the District of

9    Arizona.

10        I conclude, based on a review of the circumstances of

11   the instant case that a reasonable person in defendant's

12   position would not have believed that the presence of three

13   plain-clothed officers combined with the defendant's

14   voluntary participation in the cordial and

15   non-confrontational interview would have prevented him from

16   leaving or asking the officers to stop the questioning.

17        The fact that the officers did not tell defendant he

18   could leave or that he could request an attorney does not

19   convert the scene to the police-dominated atmosphere as in

20   Craighead.

21        These are the bases for the court's decision to deny

22   the motion to suppress.

23        How did you wish -- Mr. Ferrari, would you please

24   prepare a summary order of the court's decision and you might

25   attach the court reporter's copy of the court's analysis for

1    decision.

2         MR. FERRARI:  Yes, Your Honor.

3         THE COURT:  Can you have that ready in ten days, Ms.
4    Reporter?

5         COURT REPORTER:  Yes, Your Honor.

6         THE COURT:  How do you wish to proceed?

7         MR. HANLY:  We've all agreed to come back on the 25th
8    of February, at which time and before that time we would like
9    to meet with your clerk and pick a trial date that is
10   acceptable.  We reviewed our schedule, and at this point it
11   looks like it will be sometime in the summer.

12        THE COURT:  Any objection to that, Mr. Ferrari?

13        MR. FERRARI:  I don't object, Your Honor.

14        THE COURT:  We will continue the status conference.

15        MR. HANLY:  We will exclude time.  We're still
16   investigating and reviewing discovery.

17        MR. REICHEL:  Okay.

18        THE COURT:  We will continue the status conference to
19   February 25, 2011, 10:00 a.m., and continue to find
20   excludable time pursuant to local code T4 if defense counsel
21   will so stipulate.

22        MR. HANLY:  So stipulate for Mr. Badie.

23        MR. REICHEL:  So stipulate.

24        THE COURT:  Thank you, counsel.

25                      (Whereupon, proceedings concluded.)

1              ---oOo---

2

3       I certify that the foregoing is a correct transcript

4   from the record of proceedings in the above-entitled matter.

5

6

7                              _____

8                              MICHELLE L. BABBITT, CSR 6357

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

MICHELLE L. BABBITT, OFFICIAL COURT REPORTER -- (916)  448-7938 USDC