UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Respondent,<br><br>v.<br><br>BEHROOZ BADIE,<br><br>Movant. | No. 2:08-cr-00474 WBS KJN P<br><br>FINDINGS AND RECOMMENDATIONS |

I. Introduction

Movant is a federal prisoner, proceeding without counsel, with a motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255. Movant challenges his 2012 convictions for thirteen counts of mail fraud (18 U.S.C. § 1341). He is serving a sentence of 70 months.

Movant challenges his convictions on the following grounds: (1) ineffective assistance of trial counsel for failing to interview co-defendants, failing to request a continuance of the trial, and for failing to effectively cross-examine two witnesses and to impeach others (ground one); (2) court error in denying a continuance to allow for sentencing expert; alternatively, that counsel was ineffective for failing to obtain a continuance; (3) judicial bias; and (4) sentencing error. For the reasons stated herein, the undersigned recommends that movant's motion be denied.

////

II. Factual Background

Briefly stated, movant Behrooz Badie and two others -- Derek Davis and Dino Rosetti -- participated in a mortgage fraud scheme. Davis wanted to "flip" houses for profit, using his company Calorneva Land Company to perform the work. But Davis did not have the funds, collateral or credit to finance the necessary real estate purchases. However, by fashioning a transactional scheme, using straw buyers, that resulted in mortgage lender funds being issued directly to Calorneva for future remodeling or construction work, monies became available to him. Movant benefitted from his participation in the scheme by receiving broker or transactional fees, earned in the absence of a typical client representation or relationship.

More particularly, as a licensed real estate broker and the owner of Above and Beyond Realtors, movant represented four individuals as buyers in sixteen separate real estate transactions in the period between June 2005 and December 2006; the total sum of those purchases was approximately $11,380,000.00. Movant would approach sellers of properties that had been on the market long enough to undergo at least one decrease in the listing price and offer to purchase the home at the original, higher asking price, on behalf of straw buyers. That offer would then include an addendum and purchase agreement prepared by movant providing for the payment of monies to third party Calorneva for future home improvement work, in a sum representing the difference between the original asking price and the then-current listing price. Movant also requested the sellers' agents modify the Multiple Listing Service (MLS) information to once again reflect the original asking price to insure the arranged appraisal came in as desired at the higher number. Once the offer was accepted by the sellers as proffered by movant on behalf of the straw buyers, incomplete and misleading documentation was submitted to the various lenders by Rosetti of 1st Option Mortgage to obtain favorable financing that would not otherwise be available to Davis or his straw buyers.

A superseding indictment was filed in this court on September 3, 2009, naming movant as a defendant in the action. He pled not guilty to fourteen counts of mail fraud on September 9, 2009. On May 16, 2012, a jury found movant guilty of thirteen counts pursuant to 18 U.S.C. § 1341. The Sentencing Guideline range of 87-108 months reflected a 2-level enhancement for

ten or more victims and another 2-level enhancement because the offense involved sophisticated means; however, the court elected to "vary down two levels" to the guideline range of 70-87 months. Ultimately, movant was sentenced to 70 months' imprisonment, 36 months' supervised release and $251,250.87 in restitution.

III. Discussion

*Ground One: Ineffective Assistance of Counsel*

Movant alleges several bases upon which counsel purportedly provided ineffective assistance. Each is addressed specifically below.

In Strickland v. Washington, the Supreme Court held that there are two components to an ineffective assistance of counsel claim: "deficient performance" and "prejudice." Strickland, 466 U.S. 668, 694 (1984). Establishing "deficient performance" requires the movant to show that counsel made errors so serious that he was not functioning as the "counsel" guaranteed by the Sixth Amendment. Id. at 687. "Deficient performance" means representation that "fell below an objective standard of reasonableness." Stanley v. Cullen, 633 F.3d 852, 862 (9th Cir. 2011) (citing Strickland, 466 U.S. at 688).

"To demonstrate prejudice, the movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'" Harrington v. Richter, 562 U.S. 86, 111-12 (2011) (quoting Strickland, 466 U.S. at 693). A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the movant as a result of the alleged deficiencies. Strickland, 466 U.S. at 697.

### Counsel Failed to Interview Co-Defendants

Movant complains counsel was ineffective for failing to "interview any of the codefendants," and in particular co-defendant Davis who purportedly approached movant, asking "'why were you convicted, you had no knowledge of the scam.'" (ECF No. 343 at 4.) Movant maintains that the decision not to "pursue this option is gross negligence." (ECF No. 343 at 5.) The undersigned finds otherwise.

3

Initially, it must be pointed out that it is not clear how "counsel" can be faulted for failing to interview "the codefendants," where movant relies, in part, on a conversation purported to have occurred between movant and co-defendant Davis "8 months" after his conviction, in "January or February of 2013." (ECF No 343 at 4.) In other words, counsel cannot be faulted for not learning of, let alone attempting to present, evidence of statements made by Davis *after* movant's jury trial and sentencing.

In any event, the record indicates that defense counsel received all discovery in this matter, including the various reports concerning the interviews given by co-defendants Davis and Rosetti. Hence, counsel for movant, whether Mr. Hanley, Mr. Shemaria or Mr. Wiseman, knew what co-defendants had to offer by way of anticipated testimony. Given that knowledge, movant cannot establish that counsels' action in not seeking to interview movant's co-defendants was outside the wide range of professionally competent assistance. Strickland, 466 U.S. at 687. Nor can movant establish he was prejudiced because there is no reasonable probability the result of the proceeding would have been different; a review of the record reveals the evidence of movant's guilt was substantial, significant, and would have overwhelmed Davis's purportedly exculpating hearsay statement even had it been uttered prior to and admitted at his trial. Id. at 694; Harrington v. Richter, 562 U.S. at 111-12.

As noted by the Ninth Circuit Court of Appeals, "[a] claim of failure to interview a witness may sound impressive in the abstract, but it cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel." Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986). In fact, the record establishes counsel for movant were informed of co-defendants' accounts. (E.g., ECF No. 63 at 2 [status conference statement referencing Mr. Hanly to receive 30,000 pages of discovery]; ECF No. 103 at 5 [movant's motion to sever: "Mr. Davis who … has told the government that …"] & 6 [movant's motion to sever: "Rosetti has claimed in interviews with the government that …"]; ECF No. 120 at 2 [transcript of hearing on motion to sever wherein Hanly references "two statements" by Rosetti].) Furthermore, counsel for movant would have been aware of the factual bases for the pleas of co-defendants (ECF Nos. 29 [Davis agreement to cooperate and "to respond truthfully and

4

completely to all questions, whether in interviews, in correspondence, telephone conversations, before a grand jury, or at any trial or other court proceeding …"] & 142 [Rosetti's agreement identifying movant as a participant "in a scheme to defraud mortgage lenders in connection with the financing of at least sixteen residential real estate purchases"].) See also Bragg v. Galaza, 242 F.3d 1082, 1088 (9th Cir. 2001).

Notably, as the Government points out, co-defendants Davis and Rosetti were represented by counsel at the time of the proceedings and throughout movant's trial. Hence, their availability for purposes of an interview and/or to provide testimony for movant's defense is "speculation at best." For those reasons also, counsel for movant could not have performed deficiently by failing to interview "any of the codefendants" and Mr. Davis in particular. Strickland, 466 U.S. at 687-690.

In sum, the record makes plain defense counsel were aware of the accounts of both Davis and Rosetti; nothing more was required of counsel. Strickland, 466 U.S. at 687-690. In any event, as noted previously, evidence of movant's guilt was significant; therefore, he cannot establish prejudice for there is no reasonable probability of a different outcome even had defense counsel interviewed the co-defendants. Id. at 694.

Counsel's Failure to Request A Continuance of the Trial

Here, movant complains that because Mr. Wiseman "had no opportunity to assess the hours of efforts, investigating, interviewing, meeting with government counsels, previous counsel for preparation of a solid defense," he should have moved for a continuance "to prepare for such a voluminous case." (ECF No. 343 at 6.) He maintains Mr. Wiseman could not have benefitted from prior counsels' efforts because "there have been no investigations conducted by the prior counsels." (ECF No. 343 at 6.) Movant concludes that Mr. Wiseman "did not and would not have asked for continuance in fears of alienating or annoying the judge." (ECF No. 343 at 6-7.) This argument ignores the record.

To summarize, after the court relieved movant's initially-retained attorney Patrick Hanly on September 9, 2011, and his second counsel of choice Joseph Shemaria on December 16, 2011, Joseph J. Wiseman was appointed to represent movant. (ECF Nos. 148, 167 & 170.) The record

establishes that Mr. Wiseman plainly understood the time parameters associated with his representation of movant's legal interests involved when he accepted appointment in January 2012.

More specifically, at the proceedings held January 6, 2012, movant asked the court to appoint Mr. Wiseman to represent him. (ECF No. 318 at 4.) The court made certain Mr. Wiseman understood the history of movant's legal representation and the fact that movant had been twice advised by the court that the May 7, 2012, trial date would not be continued. (ECF No. 318 at 7-9.) The following colloquy then occurred:

> THE COURT: If I appoint you, would you go to trial on the date that's scheduled?
> MR. WISEMAN: Your Honor, yes. I was aware of the fact when I was asked to take this case over that your Honor was firm about the trial date. At that point, however, in all candor, I did not realize the magnitude of the discovery which I learned yesterday was about 46,000 pages of documents. I had a conversation with Mr. Ferrari, and he is willing to provide me with a clean copy of all of the discovery that has been produced to previous counsels, which I appreciate because it will obviate my need to get ahold of those lawyers and retrieve their files.
> So in light of that representation the government made, I can and will commit to the trial date, the firm trial date of May. I will, however, make a request to your Honor for some supplemental authority for assistance in this case. Although we have a fairly robust firm, our trial schedule is such that I think it would be impossible for my staff to be able to prepare this case for trial in light of the volume of discovery without additional assistance.
> THE COURT: Let me say this, Mr. Wiseman. I am aware of the volume of discovery. There are codefendants in this case who are cooperating government witnesses. Because of that and their plea agreements, I'm somewhat familiar with the case. My guess is that most of that so-called discovery is not that relevant or important to this particular case, although I recognize that, as an experienced lawyer, you're going to cover everything and read everything that's in the case. However, in my opinion, it's not a complex case.
> MR. WISEMAN: Well, my experience with these mortgage fraud cases, your Honor, I think that's a reasonable position to take. I think that sometimes the ultimate issues are not that complex. But as your Honor pointed out, the problem with these cases is just the sheer volume of material that competent counsel is required to at least go through to avoid a 2255.
> THE COURT: I understand.
> MR. WISEMAN: But having said that and with Mr. Ferrari's representation that he will provide me with new discovery, including an index which he already has done of the discovery, and with additional assistance, I think it's manageable, and I think it's something that we can do. And I'm not going to ask the Court to continue the trial on the basis of my inability to prepare if I get appointed.

(ECF No. 318 at 9-10.) Mr. Wiseman expressly acknowledged the May 7, 2012, trial date and

| | |
|---|---|
| 1 | the trial confirmation hearing scheduled for April 20, 2012.  (ECF No. 318 at 10.) |
| 2 |     At the trial confirmation hearing on April 20, Mr. Wiseman's associate Jennifer C. Noble |
| 3 | represented to the court that she was familiar with the case and that on behalf of Mr. Wiseman she |
| 4 | was "prepared to confirm" they would be ready for trial of the matter on May 7.  (ECF No. 312 at |
| 5 | 4.)  Shortly thereafter, the following documents were filed with the court on movant's behalf: |
| 6 | amended motions in limine (ECF No. 194 [4/26/12]); proposed voir dire (ECF No. 197 |
| 7 | [4/30/12]); and trial brief (ECF No 199 [4/30/12]).  During the trial proceedings, the following |
| 8 | documents were filed: witness list (ECF No. 210 [5/11/12]), motion in limine to exclude certain |
| 9 | statements (ECF No. 211 [5/12/12]) and proposed jury instructions (ECF No. 213 [5/14/12]).  At |
| 10 | no time did Mr. Wiseman or his associate indicate to the court the defense was not prepared to try |
| 11 | the matter. |
| 12 |     The record is clear that despite the voluminous discovery, Mr. Wiseman planned to, and |
| 13 | did, use the period between January 6 and May 7 to prepare the case for trial.  Defense counsel |
| 14 | were plainly well-versed in the facts of the case, as evidenced by their cross-examination of the |
| 15 | government's witnesses and their presentation of defense witnesses' testimony.  (ECF Nos. 232- |
| 16 | 37 [trial transcripts volumes 1-6] & 262 [closing arguments].)  Notably too, defense counsel hired |
| 17 | an individual to organize and review the discovery provided by the government.  (ECF No. 237 at |
| 18 | 831-50 [testimony of Daniel Tedmon].) |
| 19 |     Furthermore, movant's assertion that Mr. Wiseman would not have asked for a |
| 20 | continuance due to a fear of "alienating or annoying the judge" (ECF No. 343 at 6-7) is nothing |
| 21 | more than speculation.  Certainly, the record does not contain any such indication. |
| 22 |     This is not a case in which trial counsel failed to investigate or ignored a possible source |
| 23 | of evidence.  Cf. Evans v. Lewis, 855 F.2d 631, 636-37 (9th Cir. 1988) (holding counsel was |
| 24 | ineffective when his failure to investigate resulted in total absence of evidence on critical aspect |
| 25 | of the case). |
| 26 |     In sum, movant's claim alleging ineffective assistance of counsel for counsel's failure to |
| 27 | seek a continuance of the trial fails to persuade.  Mr. Wiseman did not perform deficiently where |
| 28 | the record demonstrates his readiness and preparedness for trial.  Strickland, 466 U.S. at 687-90. |

Furthermore, movant cannot establish prejudice where, as noted previously, the evidence against him was overwhelming and his guilt plain; movant made no effort to explain how, even if Mr. Wiseman had moved for and been granted more time within which to prepare for movant's defense, how additional time would have changed the outcome of the trial. There simply is no reasonable probability of a different outcome, with or without a continuance of the May 7, 2012 trial date. Id. at 694.

<u>Ineffective Cross-Examination</u>

Here, movant maintains counsel was ineffective for failing to cross-examine Melanie Anderson regarding her appraisal fees (ECF No. 343 at 8-9), and for failing "to portray Michelle Stanford as the gatekeeper and ultimately responsible for authenticity of the transactions" (ECF No. 343 at 9). Movant also complains counsel failed to impeach other witnesses with their testimony in the administrative proceeding before the Department of Real Estate. (Id.)

*Melanie Anderson*

Melanie Anderson testified at trial for the government. (ECF No. 235 at 510-94.) During direct examination, Anderson acknowledged receiving a fee of $500.00 in cash from co-defendant Davis for each of the appraisals she completed, and that her typical appraisal fee was $350.00. (ECF No. 235 at 511-12.) On cross-examination, Anderson was asked about the increased appraisal fee and testified as follows:

> [WITNESS ANDERSON]: Terry willingly paid $500 because he required more time than the typical client.
> [MR. WISEMAN]: Because this Terry gentleman was pushy; correct?
> A. Correct.
> Q. He was persistent; correct?
> A. Correct.
> Q. He was pretty demanding; correct?
> A. Correct.
> Q. And you didn't really care for this guy; right?
> A. Correct.
> Q. So therefore you charged him more money because it required more time?
> A. I would have charged him 350, but he willingly paid 500, and I believe he did so so that I would continue doing appraisals for him.
> Q. And you were interested in continuing a business relationship with Terry because he was providing a source of income for you; correct?
> A. Not necessarily.

8

(ECF No. 235 at 565-66.)

Movant bears a heavy burden of proving that counsel's assistance was neither reasonable nor the result of sound trial strategy. Murtishaw v. Woodford, 255 F.3d 926, 939 (9th Cir. 2001). He does not meet that heavy burden here where it is clear from the passage above and the record that defense counsel's tactic was to lay blame at co-defendant Davis' door in an effort to distance movant from any wrongdoing. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." Strickland, 466 U.S. at 690. And by vigorously attacking Anderson's credibility by way of showing, as movant puts it, that she wrongly "accepted funds" from a third party and that her "practice was tainted by extra money" (ECF No. 343 at 8), movant is attacking defense counsel's strategic choice. The undersigned will not question defense counsel's tactics for they are entitled to great deference.

Even assuming for argument's sake that movant's trial counsels were deficient in this regard, movant cannot establish prejudice. As noted above, the evidence against movant was overwhelming. There is no reasonable probability that had defense counsel elicited testimony from Anderson on cross-examination that she improperly accepted monies from a third party that the jury would have acquitted movant of any count. Strickland, 466 U.S. at 694.

*Michelle Stanford*

Michelle Stanford testified at trial for the defense. (ECF No. 237 at 761-831.) Movant takes issue with defense counsels' apparent failure to make Stanford out as the party "ultimately responsible for authenticity of the transactions." (ECF No. 343 at 9.)

During direct examination, escrow officer Stanford explained that an escrow officer acts as a "neutral third party" to all parties involved in a real estate transaction. (ECF No. 237 at 763.) The escrow officer, Stanford testified, "takes instructions from the principals, buyers, sellers, agents, put it on paper, everybody signs, everybody agrees, we take in the money, we disburse the money out per instructions." (Id. at 764.) Thereafter, Stanford testified regarding the involvement of co-defendants Davis and Rosetti in the transactions at issue. (Id. at 777-78, 782-84.) In particular, Stanford explained how Rosetti would advise Davis that the closing documents were ready for signature and that Davis would become "pushy" and rude in an effort to conclude

the transactions and get the necessary signatures; eventually, she asked Davis to leave her office due to his behavior. (Id. at 783-84.)

It is clear from a review of the record and Stanford's testimony that trial counsels were painting Davis and Rosetti as the individuals who controlled the transactions behind the scenes to show movant in a more flattering and less involved light. Eliciting testimony from Stanford that she was the "gatekeeper and ultimately responsible for the authenticity" of the transactions at issue would have been contrary to that strategy. Defense counsels' tactic was a reasonable one and is entitled to deference. Strickland, 466 U.S. at 690. Further, even were there some deficiency, movant cannot establish prejudice. There is no reasonable probability of a different outcome even had Stanford been portrayed as movant argues, because despite such testimony the evidence of movant's guilt was significant. Id. at 694.

*Other Witnesses*

Movant complains "the testimony of the witnesses at the court was different than the testimony which they made during department of Real Estate hearings in the Spring of 2011," and that defense counsel made no effort "to compare notes which would have prejurized [*sic*] them." (ECF No. 343 at 9.)

This argument fails at the outset because movant makes no effort whatsoever to identify what "witnesses at the court" testified differently than they had during administrative proceedings. A habeas petitioner must make a sufficient factual showing to substantiate the claims. United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984). Conclusory, unsupported allegations do not warrant habeas relief. See James v. Borg, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"); Jones v. Gomez, 66 F.3d 199, 205 (9th Cir. 1995) (habeas relief not warranted where claims for relief are unsupported by facts). Given this deficiency, movant cannot show that defense counsels were ineffective for failing to impeach witnesses at trial. Strickland, 466 U.S. 684-694. Accordingly, movant does not meet his burden of substantiating his claim for ineffective assistance of counsel on this basis. Murtishaw v. Woodford, 255 F.3d at 939; United States v. Schaflander, 743 F.2d at 721.

*Ground Two: The Court's Ruling Concerning a Sentencing Expert*

In this claim, movant asserts "error made by the court and or defendant's counsel," referring to the district judge's decision to proceed with sentencing before the defense could obtain a forensic appraisal regarding the lenders' financial losses. He argues relatedly that if this court finds no error, then defense counsels were ineffective for "not acting more diligently" to obtain a continuance. (ECF No. 343 at 10-13.)

<u>Ninth Circuit's Ruling</u>

As the government correctly points out, the Ninth Circuit Court of Appeals has already considered and rejected this claim on appeal. (ECF No. 354 at 18; see also ECF No. 329.) More specifically, the Ninth Circuit held as follows:

> Finally, we reject Defendant-Appellant's claim that the trial court abused its discretion by denying Defendant-Appellant's motion for continuance of sentence proceedings. Defendant-Appellant was not diligent in readying his defense prior to the date of sentencing; it is unlikely that the need for the continuance would have been met if the continuance had been granted; the continuance would have inconvenienced the trial court; and Defendant-Appellant was not prejudiced by the denial of the motion. *See United States v. Flynt*, 756 F.2d 1352, 1359 (9th Cir. 1985).

(ECF No. 329 at 2-3.) As the Ninth Circuit has previously held, "[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent [§] 2255 proceeding. [Citations.] The fact that the issue may be stated in different terms is of no significance. [Citation.]" <u>United States v. Currie</u>, 589 F.2d 993, 995 (9th Cir. 1979). Indeed, "[a]bsent Supreme Court authority contrary to [the court of appeals'] decision in a case, a district court cannot entertain, even in a matter properly before it, a petition by a party which in effect seeks to undo [the court of appeals'] resolution of a matter first addressed to and fully and fairly adjudicated by it." <u>Feldman v. Henman</u>, 815 F.2d 1318, 1321 (9th Cir.1987); <u>see also</u> <u>Insurance Group Comm. v. Denver & Rio Grande W. R.R.</u>, 329 U.S. 607, 612 (1947) (stating that "[w]hen matters are decided by an appellate court, its rulings, unless reversed by it or a superior court, bind the lower court").

For the foregoing reason, the undersigned will not consider movant's argument that the district court erred. However, the undersigned will consider movant's argument in the alternative, to wit: whether defense counsels were diligent in seeking the assistance of a sentencing expert, because although the Ninth Circuit's unpublished opinion references a lack of diligence, that reference was not offered in the context of an ineffective assistance claim.

<u>Ineffective Assistance of Counsel re Sentencing</u>

To briefly review, to prevail on a claim of ineffective assistance of counsel, movant must show that counsels' performance was deficient, and that as a result of that deficiency, he suffered prejudice. <u>Strickland</u>, 466 U.S. at 684-694. As explained below, this he cannot do.

*Relevant Background*

Movant was found guilty of all charges on May 16, 2012. (ECF No. 215.) On that date, sentencing was scheduled for August 24, 2012. (Id.) Sentencing was then continued multiple times at the request or with the agreement of all parties. (ECF Nos. 225, 240, 245, 258.) On November 28, 2012, Mr. Wiseman filed a motion on movant's behalf to continue sentencing to allow for a forensic appraisal to take place; the document did not identify a new sentencing hearing date, nor did it request the court select a new date. (ECF No. 266.) The government opposed the motion and movant filed a reply to that opposition. (ECF Nos. 267 & 268.) The parties appeared before the court two days later on November 30, 2012, and the district judge denied the motion, stating in relevant part:

> THE COURT: Mr. Wiseman. I'll take up the motion for continuance of sentencing in this case first. Defendant has filed a motion to continue sentencing in this case which I received and reviewed yesterday. And the government yesterday filed a response objecting to this belated request for a postponement of sentencing which, if granted, would require another judge to familiarize himself with this complicated case in which I have already sentenced two codefendants.
> Also, this is the fifth request by defendant to continue sentencing. I previously granted the preceding four motions for continuance. I think enough is enough. For the reasons stated in the government's objection, the defendant's motion to further continue sentencing in this case is now denied. In addition, transferring this case to another judge would be a waste of judicial resources. I've heard witnesses at trial of this defendant, a motion to suppress evidence by this defendant. Witnesses testified as to both of these matters. If I were to transfer the case to another judge, it would take him some time to familiarize himself with the case, order transcripts, and review the sentencings, my

12

sentencings of the other two defendants. And I just don't think it's appropriate in this case. I'll hear you solely for the record if you wish, Mr. Wiseman. I have read your brief.

MR. WISEMAN: Your Honor, then I won't belabor the point. As we've pointed out in the brief, the genesis and the grounds for the motion to continue was the question of availability of CJA funds to hire an appraiser to do retrospective appraisals of the 16 properties in question. I appreciate the fact that your Honor had granted the request. But because it was over the statutory limit that the CJA requires, the request required Ninth Circuit Court of Appeals' approval which we received the day we filed the motion to continue. But that was the genesis of it. Our goal to get the appraisals done was to provide the Court with a more accurate assessment and valuation of the properties for the loss calculation.

THE COURT: I understand that. And I understand the furor throughout the country because of the status of the real estate market from 2006 on. And it's a very complicated study. And I just don't want to get involved in it with this short notice.

MR. WISEMAN: Sure. And the goal was, and I appreciate the Court's ruling, but the goal was to provide as much information to your Honor in making a decision in, as the Court just pointed out, a very complex, very controversial, and quite uncertain area of loss when it comes to real estate foreclosures. And that was the whole reason for doing that. And again, we appreciate the Court had agreed with us and approved it. The Ninth Circuit just didn't do it in time.

THE COURT: All right. I should note for the record that the government -- I think I did -- that the government immediately filed an opposition to the motion to continue; is that correct, Mr. Ferrari?

MR. FERRARI: It is, your Honor.

THE COURT: All right. We'll proceed with sentencing for the reasons I've stated.

(ECF No. 284 at 24-27.)

*Analysis*

In order to establish deficiency, movant is required to show that counsel's performance "fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. The undersigned's review of the record leads to a finding of no deficiency.

In the initial stipulated continuance, defense counsel indicated a need for "additional time to research the loss" suffered by the lenders. (ECF No. 225 at 2.) After a subsequent continuance related to the probation officer's unavailability (ECF No. 240), defense counsel sought a further continuance to allow for "research [of] issues related to the correct amount of loss applicable to the case and to prepare a sentencing memorandum." (ECF No. 245 at 2.) Less than one month later, a continuance was sought due to counsel's "trial schedule" and to allow for further research

13

of "issues related to loss." (ECF No. 258 at 2.) Arguably, defense counsel was diligent in his efforts to research the ways in which the loss suffered by the lenders could be calculated in a manner that would benefit movant. Because, as the government pointed out in its opposition, "retrospective appraisals" were not common, the undersigned cannot say counsel acted unreasonably by seeking time within which to research the issue. Nor can the undersigned find that by failing to obtain the district court's approval, following several previous continuances, of a motion for a continuance of sentencing scheduled to commence two days later on November 30, 2012, and after more than five months had passed since the jury rendered its guilty verdicts, that defense counsel was somehow deficient. Strickland, 466 U.S. at 688.

Nevertheless, even assuming solely for the sake of argument that counsel performed deficiently, movant cannot show he suffered any prejudice as a result. This determination is so because there was no guarantee the district court would have credited the sentencing expert's opinion or "retrospective" appraisal. Saros v. Richardson, 435 F.2d 821, 822 (9th Cir. 1971) (citing Williams v. New York, 337 U.S. 241, 246 (1949) (a sentencing judge had "wide discretion in the sources and types of evidence used to assist him in determining the kind and extent of punishment to be imposed within limits fixed by law"). As the government stated, its counsel has "prosecuted multiple mortgage fraud cases in this district, and not one of the resulting sentencing proceedings has utilized forensic appraisals in determining loss." (ECF No. 354 at 18-19.) Further, the undersigned's own research failed to identify such a use in any similar California federal district court matter.

Additionally, Comment 3(E)(ii) of Sentencing Guidelines section 2B1.1 directs that

> [l]oss shall be reduced by the following: . . . . In a case involving collateral pledged or otherwise provided by the defendant, the amount the victim has recovered at the time of sentencing from disposition of the collateral, or if the collateral has not been disposed of by that time, the fair market value of the collateral at

14

the time of sentencing.

USSG § 2B1.1, comment (n.3(E)(ii)). If the property had not been disposed of at the time of sentencing, then the district court could look to the "fair market value of the collateral." Id. In this case, the property had already been sold at a foreclosure sale and so the amount of loss was offset by "the amount the victim ha[d] recovered at the time of sentencing from disposition of the collateral." Id. Therefore, the court's consideration of any retrospective appraisal would have been irrelevant if not improper.

The court's actual calculation is also supported by the United States Supreme Court's holding in Robers v. United States, 572 U.S. 639, 642-46 (2014) (when victim of fraudulent loan takes title to collateral securing the loan, sentencing court must reduce offender's restitution amount by amount of money victim received in selling the collateral, not value of collateral when victim received it) and the Ninth Circuit's holding in United States v. Crandall, 525 F.3d 907, 915 (9th Cir. 2008) (recognizing there is little logic in increasing or decreasing a defendant's sentence as a result of wholly independent and unpredictable factors as the fluctuating values in the volatile real estate market). See also United States v. Hymas, 780 F.3d 1285, 1293-94 (9th Cir. 2015) ("We conclude that the district court correctly calculated the losses by taking the principal amount of the loan and subtracting any credits from the subsequent sale of the property" & "fluctuations in property values are 'common' and 'foreseeable,' and that a drop in the market does not sever the link between the fraud and the lenders' losses").

In sum, movant cannot show that but for counsel's (assumed) errors, the result of the proceeding would have been different because the court's consideration of a retrospective appraisal was not required and appears contrary to the appropriate guidelines. His claim of ineffective assistance of counsel in this regard fails.

*Ground Three: Judicial Bias*

Here, movant contends the district court judge presiding over his trial and sentencing "showed actual bias and gave appearance of bias to a degree requiring recusal." (ECF No. 343 at 14.) The government responds that the claim cannot be considered because it was previously presented and rejected on direct appeal to the Ninth Circuit. (ECF No. 354 at 20-21.) The

15

government's position is correct.

In its January 15, 2015 memorandum, the Ninth Circuit concluded Judge Garcia "did not 'display a deep-seated favoritism or antagonism that would make fair judgment impossible,'" and that his "comments were permissible 'expressions of impatience, dissatisfaction, annoyance, and even anger.'" (ECF No. 329 at 2.) Because the appellate court has already considered movant's claim, this court is precluded from doing so. United States v. Currie, 589 F.2d at 995; Feldman v. Henman, 815 F.2d at 1321; Insurance Group Comm. v. Denver & Rio Grande W. R.R., 329 U.S. at 612.

To the degree movant can be understood to argue the law of the case should not apply here, the undersigned does not agree. The doctrine of "law of the case" will ordinarily prevent a court from reconsidering an issue which was previously decided by that court, or by a higher appellate court, in the same case. United States v. Maybusher, 735 F.2d 366, 370 (9th Cir. 1984), cert. denied, 469 U.S. 1110 (1985); Moore v. Jas. H. Matthews & Co., 682 F.2d 830, 833 (9th Cir. 1982). The doctrine is discretionary; however, this court will re-examine a previous decision only where the evidence on a subsequent trial was substantially different, controlling authority has since made a contrary decision of the law applicable to such issues, or the decision was clearly erroneous and would work a manifest injustice. United States v. Houser, 804 F.2d 565, 568 (9th Cir. 1986) (quoting Moore, 682 F.2d at 834). None of those conditions is present here.

*Ground Four: Sentencing Error*

Lastly, movant argues that the "court erred in regards to sophisticated means" because although the "scheme may have used sophisticated means, it was masterminded by the organizer" and his part consisted of "simply fill[ing] out the purchase agreements per buyers wishes," further explaining that he "was never involved with the loan application …." (ECF No. 343 at 16.)

As the government contends here too, the claim is not cognizable. In United States v. Schlesinger, 49 F.3d 483, 485 (9th Cir. 1994), the Ninth Circuit rejected a § 2255 claim that the district court had failed to resolve factual disputes at sentencing as required by Federal Rule of Criminal Procedure 3(c)(3)(D). The circuit court held that non-constitutional sentencing errors not raised on appeal are waived and may not reviewed under § 2255. Id. at 485. In this case, like

Schlesinger, movant is alleging an error by the sentencing judge that could have been raised on appeal but was not.  See also United States v. James, 109 F.3d 597, 599 (9th Cir. 1997) (concluding that where a defendant fails to raise an issue in his first direct appeal he waives the issue); United States v. Gianelli, 543 F.3d 1178, 1185-86 (9th Cir. 2008) (same); United States v. Hymas, 780 F.3d at 1294 (same).  Movant's indication that he "didn't believe" he could raise the issue on appeal (ECF No. 343 at 16 [(b)(2)]) does not change this finding.

IV.  Conclusion

IT IS HEREBY RECOMMENDED that:

1. Movant's January 15, 2016, motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 be denied; and

2. The Clerk of the Court be directed to close the companion civil case No. 2:16-cv-00105-WBS-KJN.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  If movant files objections, he shall also address whether a certificate of appealability should issue and, if so, why and as to which issues.  A certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(3). Any response to the objections shall be served and filed within fourteen days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 22, 2019

_____
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

/badi0424.257.kjn